**BURCH & CRACCHIOLO, P.A.**
1850 N. CENTRAL AVENUE, SUITE 1700
PHOENIX, AZ 85004
TELEPHONE 602.274.7611

Frank M. Fox, SBN 010235
ffox@bcattorneys.com

Alexis J. Rogoski
Douglas B. Giombarrese
**SKARZYNSKI MARICK & BLACK LLP**
One Battery Park Plaza, 32nd Floor
New York, New York  10004
Telephone:  (212) 820-7765
Facsimile:   (212) 820-7740
arogoski@skarzynski.com
dgiombarrese@skarzynski.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant. | No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

For its Complaint against Defendant Federal Insurance Company ("Chubb"), Plaintiff Scottsdale Insurance Company ("Scottsdale") states the following:

## NATURE OF THE ACTION

1. Scottsdale brings this Complaint for Declaratory Judgment seeking a declaration that Chubb has an obligation to contribute to the defense of the parties' mutual insureds in a pending adversary proceeding in the United States Bankruptcy Court for the District of Arizona (the "Adversary Proceeding"). Scottsdale and Chubb issued primary directors and officers liability insurance policies to Medical Diagnostic Imaging Group

1. ("MDIG"), with Scottsdale's policy in effect from November 7, 2017 to November 7, 2018, and Chubb's policy in effect from period from December 7, 2018 to February 5, 2020 with an applicable extended reporting period of one year. The Adversary Proceeding arises out of the bankruptcy of MDIG and names various Directors of MDIG's Board and their spouses as defendants, all of whom qualify as insureds under both policies. As the Adversary Proceeding makes allegations which trigger the duty to defend, Scottsdale has fulfilled its obligation under its policy and has been defending its insureds subject to a reservation of rights.

2. While Chubb has acknowledged that its policy's duty to defend is also triggered by the Adversary Proceeding, it has taken the position that its "Other Insurance" clause relieves it of its obligation to contribute to the defense. However, the language in the "Other Insurance" clause in the Chubb policy is inapplicable insofar as its policy does not temporally overlap with the policy issued by Scottsdale. In such circumstances, the Scottsdale policy and the Chubb policy function as co-primary policies. Scottsdale accordingly seeks a declaratory judgment that it is entitled to contribution from Chubb for any costs incurred in defending the parties' mutual insureds in the Adversary Proceeding.

**PARTIES**

3. Scottsdale is an insurance company duly organized and existing under the laws of the State of Ohio with its principal place of business located in Scottsdale, Arizona.

4. Upon information and belief, Chubb is an insurance company duly organized and existing under the laws of Indiana with its principal place of business located in Whitehouse Station, New Jersey.

## JURISIDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and Chubb, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1) as Chubb resides in this District and Division.

## FACTUAL ALLEGATIONS

### The Scottsdale Policy

7. Scottsdale issued Business and Management Indemnity Policy Number EKS3237834 (the "Scottsdale Policy") to MDIG effective for the period from November 7, 2017 to November 7, 2018 (the "Scottsdale Policy Period"). A copy of the Scottsdale Policy is attached hereto as "Exhibit 1."

8. Subject to the Scottsdale Policy's terms, conditions, limitations, exclusions, and endorsements, the Scottsdale Policy provides coverage under the following Coverage Sections: (1) Employment Practices Coverage Section; (2) Directors and Officers and Company Coverage Section (the "D&O Coverage Section"); and (3) Fiduciary Coverage Section. Only the D&O Coverage Section is implicated by the Adversary Proceeding.

9. Insuring Clause A.1 of the D&O Coverage Section provides coverage for "Loss" for which the "Directors and Officers" are not indemnified by the "Company" and which the "Directors and Officers" have become legally obligated to pay by reason for a "Claim" first made

against the "Directors and Officers" during the Scottsdale Policy Period or, if elected, the "Extended Period," and reported to Scottsdale pursuant to Section E.1. of the Scottsdale Policy, for any "Wrongful Act" taking place prior to the end of the Scottsdale Policy Period. (Ex. 1 at D&O Coverage Section § A.1.).

10. Insuring Clause A.2 of the D&O Coverage Section provides coverage for "Loss" of the "Company" for which the "Company" has indemnified the "Directors and Officers" and which the "Directors and Officers" have become legally obligated to pay by reason for a "Claim" first made against the "Directors and Officers" during the Scottsdale Policy Period or, if elected, the "Extended Period," and reported to Scottsdale pursuant to Section E.1. of the Scottsdale Policy, for any "Wrongful Act" taking place prior to the end of the Scottsdale Policy Period. (Ex. 1 at D&O Coverage Section § A.2.)

11. The Scottsdale Policy defines "Company" to mean the "Parent Company" and any "Subsidiary," including any such organization as a debtor-in-possession or the bankruptcy estate of such entity under United States bankruptcy law or an equivalent status under the law of any other jurisdiction. (*Id.* at General Terms & Conditions § B.2.).

12. The "Parent Company" includes MDIG. (*Id.* at Declarations, Item 1).

13. "Directors and Officers" is defined in Section B.4. of the Scottsdale Policy to mean:

any person who was, now is, or shall become:

    a. a duly elected or appointed director, officer, or similar executive of the Company, or any member of the management board of the Company;

    b. a person who was, is or shall become a full-time or part-time employee of the Company;

    c. the functional equivalent of directors or officers of a Company incorporated or domiciled outside the United States of America;

(*Id.* at D&O Coverage Section B.4.).

4

Endorsement 17 of the Scottsdale Policy modifies the definition of "Directors and Officers" to include:

> any natural person who is a leased employee or is contracted to perform work for the Company, or is an independent contractor for the Company, but only to the extent such individual performs work or services for or on behalf of the Company;

(*Id.* at Endorsement No. 17).

Endorsement 28 of the Scottsdale Policy further modifies the definition of "Directors and Officers" to include:

> a member of any duly constituted committee of the Company;
>
> any natural person engaged by a duly constituted committee of the Company for purposes of providing an expert opinion with regard to a peer review or credentialing decision concerning an individual physician; and
>
> any individual manager of any operational department or any staff physician or faculty member of the Company.
>
> regardless of whether any such person is directly employed by the Company or considered an independent contractor of the Company.

(*Id.* at Endorsement No. 28).

14. The Scottsdale Policy further provides that the spouses of natural persons who are Insureds shall be considered Insureds under the Scottsdale Policy; provided, however, coverage is afforded to such spouses only for a Claim arising solely out of their status as such and where the Claim seeks damages from marital community property, jointly held property or property transferred from the natural person who is an Insured to the spouse. (*Id.* at General Terms & Conditions § F.).

15. "Claim" is defined in the D&O Coverage Section of the Scottsdale Policy to mean, among other things, "a written demand against any Insured for monetary damages or non-monetary or injunctive relief" and "a civil proceeding against any Insured seeking monetary

5

damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading." (*Id.* at D&O Coverage Section §§ B.1.(a) and (c)).

16. The Scottsdale Policy defines "Wrongful Act" to mean, in pertinent part, "any actual or alleged error, omission, misleading statement, misstatement, neglect, breach of duty or act allegedly committed or attempted by . . . any of the Directors and Officers, while acting in their capacity as such, or any matter claimed against any Director or Officer solely by reason of his or her serving in such capacity . . . ." (*Id.* at D&O Coverage Section § B.9.).

17. The Scottsdale Policy defines "Loss" to mean, in pertinent part, damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and "Costs, Charges and Expenses" incurred by "Directors and Officers" under Insuring Clauses 1. or 2. (*Id.* at D&O Coverage Section § B.7.).

18. The "Other Insurance" clause of the Scottsdale Policy as amended by Endorsement provides:

> For any claim, if any Loss covered under this Coverage Section is covered under any other valid and collectible insurance, then this Policy shall be primary insurance, unless expressly written to be excess over other applicable insurance.

(*Id.* at D&O Coverage Section § G as amended by Endorsement No. 10).

19. Section D.(3). of the Scottsdale Policy provides, in pertinent part, that all "Claims" arising out of the same "Wrongful Act" and all "Interrelated Wrongful Acts" shall be deemed to constitute a single "Claim" and shall be deemed to have been made at the earlier of the time when the earliest "Claim" involving the same "Wrongful Act" or "Interrelated Wrongful Act" is first made or the time at which the "Claim" involving the same "Wrongful Act" or "Interrelated Wrongful Acts" is made pursuant to Section E.2. (*Id.* at D&O Coverage Section §§ D.3. (a) and (B)).

20. Section E.(1). of the D&O Coverage Section states that the Insureds shall, as a condition precedent to their rights to payment under the D&O Coverage Section, give Scottsdale

6

written notice of any Claim as soon as practicable, but in no event later than sixty (60) days after the end of the Scottsdale Policy Period. (*Id.* at D&O Coverage Section § E(1).).

21.     Section E.(2). of the D&O Coverage Section states that if, during the Scottsdale Policy Period, any of the "Insureds" become aware of a specific "Wrongful Act which pay reasonably give rise to a future "Claim" covered under the Scottsdale Policy, and if the "Insureds give notice during the "Policy Period" as described in Section E.(2) (a) through (f), then any "Claim" made subsequently arising out of such "Wrongful Act" shall be deemed to have been made at the time such notice was received. the Insureds shall, as a condition precedent to their rights to payment under the D&O Coverage Section, give Scottsdale written notice of any Claim as soon as practicable, but in no event later than sixty (60) days after the end of the Scottsdale Policy Period. (*Id.* at D&O Coverage Section § E(2).

## The Chubb Policy

22.     Chubb issued a claims-made policy under Policy Number 8255-5448 (the "Chubb Policy") to MDIG effective, as modified by Endorsement No. 5, for the period from December 7, 2018 to February 5, 2020 (the "Chubb Policy Period"). A copy of the Chubb Policy is attached hereto as "Exhibit 2."

23.     Subject to the Chubb Policy's terms, conditions, limitations, exclusions, and endorsements, the Chubb Policy provides coverage under the following Coverage Parts: (1) Directors & Officers Entity Liability Coverage Part (the "D&O Coverage Part"); (2) Employment Practices Liability Coverage Part; (3) Fiduciary Liability Coverage Part; and (4) Crime Coverage Part.

24.     Insuring Clause I.(A) of the D&O Coverage Part provides coverage on behalf of an "Insured Person" for "Loss" on account of a "Claim" first made against the "Insured Person"

during the Chubb Policy Period, or the "Extended Reporting Period" if applicable, to the extent that such "Loss" is not indemnified by an "Organization." (Ex. 2 at D&O Coverage Part § I.(B)).

25. Insuring Clause I.(B) of the D&O Coverage Part provides coverage on behalf of an "Organization" for "Loss" on account of a "Claim" first made against an "Insured Person" during the Chubb Policy Period, or the "Extended Reporting Period" if applicable, to the extent that the Organization indemnifies the "Insured Person" for such "Loss" as permitted or required by law. (*Id.* at D&O Coverage Part § I.(B)).

26. As amended by Endorsement No. 6, the Chubb Policy provides that the applicable Extended Reporting Period is from February 5, 2020 to February 5, 2021. (*Id.* at Endorsement No. 6).

27. The Chubb Policy defines "Organization" to mean the "Parent Organization" or any "Subsidiary," as well as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country. (*Id.* at General Terms and Conditions § II.).

28. "Parent Organization" includes MDIG. (*Id.* at Declarations, Item 1).

29. "Insured Person" is defined in Section IV. of the Chubb Policy to mean any "Executive" or "Employee" of an "Organization" acting either in his or her capacity as such or in an "Outside Capacity." (*Id.* at D&O Coverage Part § IV).

30. "Executive" is defined, in pertinent part, to mean a duly elected or appointed director, officer, member of the Advisory Board or in-house general counsel of any "Organization" incorporated in the United States of America, as well as any duly constituted committee member.  As amended by Endorsement No. 2, the definition of "Executive" under the D&O Coverage Part includes, in pertinent part, a "duly constituted committee member."  (*Id.* at D&O Coverage Part § IV. and Endorsement No. 2).

31. Coverage under the Chubb Policy extends to "Claims" for "Wrongful Acts" of an Insured Person against the lawful spouse or domestic partner of such "Insured Person" solely by reason of their status as such, or such spouse or domestic partner's ownership interest in property which the claimant seeks as recovery for an alleged "Wrongful Act" of such "Insured Person." (*Id.* at General Terms and Conditions § VII.).

32. "Claim" is defined in the D&O Coverage Part of the Chubb Policy to mean, among other things, "a written demand first received by an Insured for monetary or non-monetary relief, including injunctive relief" and a "civil proceeding commenced by the service of a complaint or similar proceeding." (*Id.* at D&O Coverage Part § IV.).

33. The Chubb Policy defines "Wrongful Act" to mean, in pertinent part, "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by … any Insured Person while acting in his or her capacity as such or in any matter claimed against an Insured Person solely by reason of his or her status as such." (*Id.* at D&O Coverage Part § IV.).

34. The "Other Insurance" clause of the Chubb Policy provides:

> If any Loss under this Coverage Part is insured under any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by this Coverage Part), this Coverage Part shall be excess of and shall not contribute with such other insurance, regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(*Id.* at D&O Coverage Part § XI.(A)).

### MDIG's Bankruptcy and Procedural Background

35. Upon information and belief, MDIG was formed in 1989 as an Arizona professional corporation that provided radiology services in and around Arizona.

36. On December 16, 2019, MDIG filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona and was assigned case number 2:19-bk-15722-DPC.

37. Pursuant to an order dated January 2, 2020, the MDIG bankruptcy proceedings are being jointly administered along with the Voluntary Chapter 11 Petitions of several MDIG affiliate entities, MDIG of Arizona, LLC, MDIG of Pennsylvania, LLC, and MDIG of Washington, PLLC (collectively with MDIG, "Debtors").

38. On October 15, 2020, the bankruptcy court entered an Order approving the Debtors' & Committee's Amended Combined Plan of Liquidation and Disclosure Statement (the "Plan"). The Plan established the MDIG Creditor Trust with the purpose of, among other things, investigating prosecuting, and liquidating certain claims and assets of the Debtors' Estate, as well as evaluating the claims of certain creditors.

39. Jeremiah Foster was appointed Trustee of the MDIG Creditor Trust.

## The Adversary Proceeding

40. On May 27, 2021, Jeremiah Foster, in his capacity as Liquidating Trustee of the MDIG Creditors Trust (the "Trustee"), filed an adversary complaint (the "Adversary Complaint") arising out of the Debtors' bankruptcy. A copy of the Adversary Complaint is attached hereto as "Exhibit 3."

41. On information and belief, the Trustee provided Chubb a Notice of Claims and Policy Limits Demand letter dated February 3, 2021, prior to expiration of the Chubb Policy's Extended Reporting Period.

42. The Adversary Complaint names the following defendants: Aaron Wittenberg, M.D. and Stacie Wittenberg, Peter Steinberg, M.D. and Deborah Davis-Steinberg, Abjihit Shah, M.D. and Neepa Shah, M.D., John Eelkema, M.D. and Jane Doe Eelkema, Bart Hovey, M.D.

and Jane Doe Hovey, Waheed Jalalzai, M.D. and Jane Doe Jalalzai, Orlando Micheli, M.D. and Jane Doe Micheli, William Romano, M.D. and Jane Doe Romano, and Tamim Sultani, M.D. and Jane Doe Sultani (collectively, the "Adversary Defendants").

43. Adversary Defendants Aaron Wittenberg, M.D., Peter Steinberg, M.D., John Eelkema, M.D., Bart Hovey, M.D., Waheed Jalalzai, M.D., Orlando Micheli, M.D., William Romano, M.D., and Tamim Sultani, M.D. are each alleged to be a member of MDIG's Board of Directors.

44. Adversary Defendant Abjihit Shah, M.D. is alleged to be a Trustee of MDIG's pension pans and a member of MDIG's finance committee.

45. Adversary Defendants Stacie Wittenberg, Deborah Davis-Steinberg, Neepa Shah, M.D., Jane Doe Eelkema, Jane Doe Hovey, Jane Doe Jalazai, Jane Doe Micheli, Jane Doe Romano, and Jane Doe Sultani, are alleged to be the spouses of the Adversary Defendants referenced in paragraphs 42 and 43 and are not alleged to have held positions with MDIG.

46. The Adversary Proceeding makes a series of allegations of wrongful acts, errors, neglect, omissions, and breaches of duties by the Adversary Defendants that ultimately led to the financial collapse and bankruptcy of MDIG in 2019. The Adversary Proceeding seeks to recover in excess of $1.8 million in payments made by the Debtors to or for the benefit of the Adversary Defendants in their capacity as directors and insiders of the Debtors while the Debtors were insolvent, as well as losses incurred as a result of the Adversary Defendants' conduct.

47. Specifically, the Trustee alleges that defendant Santore, in his capacity as Chief Executive Officer of MDIG, used improper accounting techniques to manipulate the appearance of MDIG's financials, used an affiliate entity to redirect MDIG's income to himself and shareholders, and engaged in nepotism and self-dealing, all resulting in harm to MDIG. The Trustee alleges that the Adversary Defendants failed to take the reasonable and necessary steps

to protect MDIG's shareholders and creditors notwithstanding the fact that they were aware of Santore's alleged mismanagement.

48. The Trustee also alleges: the Adversary Defendants improperly terminated more than a dozen radiologists after losing a contract with one of its customers, resulting in significant understaffing, and that the Adversary Defendants failed to inform shareholders of a lawsuit filed by that customer; the Adversary Defendants permitted MDIG to make excess severance payments that were not authorized by shareholders, contributing to MDIG's financial deterioration; the Adversary Defendants caused MDIG to become financially over-extended through the creation in 2018 of multiple LLCs in various states, and in so doing, permitting MDIG to extend the maturity date on certain loans by securing them with property of MDIG affiliates without shareholder knowledge or consent; the Adversary Defendants failed to fund a "Cash Balance Plan" and a "Profit-Sharing Plan and Trust" in 2018 and 2019; Santore and defendant Inguiy, with the Adversary Defendants' knowledge, diverted MDIG contracts and opportunities to other competitors; and the Adversary Defendants made overpayments without shareholder or Board approval to various employee-shareholders, including the Adversary Defendants.

49. Based on these and other allegations, the Trustee asserts five causes of action: (1) Breach of Fiduciary Duty; (2) Avoidance of Preferential Transfers, 11 U.S.C. § 547; (3) Fraudulent Transfers, 11 U.S.C. §§ 544 and 548; (4) Recovery of Avoided Transfers, 11 U.S.C. § 550; and (5) Objection to Claims, against defendants Jalazai, Romano, Sultani, and Wittenberg.

### Scottsdale's Coverage Position

50. After receiving notice of the Adversary Complaint, Scottsdale issued a coverage position letter to MDIG on July 15, 2021. A copy of the Scottsdale's coverage position letter is attached hereto as "Exhibit 4."

51. Scottsdale's coverage position letter acknowledged that each Adversary Defendant qualified as an Insured under the Scottsdale Policy based on their status as either a member of MDIG's Board of Directors, an employee, a member of the finance committee, or as a spouse of one of these individuals.

52. Scottsdale's coverage position further acknowledged that the allegations in the Adversary Complaint triggered the duty to defend pursuant to the terms and conditions of the D&O Coverage Section of the Scottsdale Policy.

53. Although the Adversary Complaint was filed on May 27, 2021, Scottsdale acknowledged that the Scottsdale Policy was triggered insofar as the Adversary Complaint potentially arose from the same Wrongful Acts or Interrelated Wrongful Acts as prior Claims that were first made during the Scottsdale Policy Period.

54. Accordingly, Scottsdale agreed to provide a defense to the Adversary Defendants subject to an express reservation of rights.

55. Among other express reservations, Scottsdale's coverage position letter noted that coverage under the D&O Coverage Section was limited to covered Loss resulting from wrongdoing that allegedly occurred on or before the expiration of the Policy Period on November 7, 2018.

56. In addition, Scottsdale's coverage position letter specifically cited the Scottsdale Policy's "Other Insurance" clause as amended by Endorsement No. 10, which provides that if any Loss covered under the D&O Coverage Section is covered under any other valid and collectible insurance, then the Policy shall be primary insurance, unless expressly written to be excess over other applicable insurance. The letter further stated that if another policy issued to MDIG also provided primary coverage, that Scottsdale may be entitled to contribution from the other insurer(s).

57. Scottsdale appointed Gordon Rees Scully Mansukhani, LLP ("Gordon Rees") to represent the Adversary Defendants in the Adversary Proceeding.

58. Upon information and belief, Gordon Rees continues to represent the Adversary Defendants in the Adversary Proceeding.

### Chubb's Coverage Position

59. After receiving notice of the Adversary Complaint, Chubb issued a coverage position letter on August 20, 2021. A copy of Chubb's coverage position letter is attached hereto as "Exhibit 5."

60. Chubb's coverage position letter acknowledged that each of the Adversary Defendants qualified as "Insured Persons" under the Chubb Policy.

61. Chubb's coverage position letter also acknowledged that the Adversary Complaint constituted a "Claim"" for "Wrongful Acts," thus triggering coverage under Insuring Clauses I.A. and I.B. of the Chubb Policy.

62. Further, because Chubb had received a Notice of Claims and Policy Limits Demand letter dated February 3, 2021 from counsel for the Trustee setting forth allegations against various directors and officers of MDIG, during the applicable Extended Reporting Period, the Claim was made within the period of insurance of the Chubb Period.

63. However, despite acknowledging that its duty to defend was triggered, Chubb did not offer to defend the Adversary Defendants.

64. Rather, Chubb's coverage position stated that Scottsdale's defense of the Adversary Defendants, in conjunction with the of the Chubb Policy's "Other Insurance" clause, meant that the Chubb Policy would apply excess of and not contribute with the Scottsdale Policy. Specifically, Chubb stated that "We understand that Nationwide issued a directors and officers liability Policy to MDIG for periods period to the inception of the Policy, and that Nationwide

has agreed to defend the Defendants…. If so, then pursuant to Section XI(A) of the Policy would apply excess of and not contribute with the Nationwide policy." Nationwide is the parent company of Scottsdale.

65. In actuality, because the Scottsdale Policy and the Chubb Policy were issued for different policy periods, Scottsdale and Chubb did not insure the same risk. As such, the application of the Chubb Policy's "Other Insurance" clause is entirely irrelevant, and Scottsdale's defense of the Adversary Defendants has no bearing on Chubb's duty to defend.

**COUNT I – DECLARATORY JUDGMENT AS TO SCOTTSDALE'S RIGHT TO CONTRIBUTION**

66. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 64 of this Complaint.

67. An actual, present, and justiciable controversy exists concerning whether Scottsdale is entitled to contribution from Chubb for costs incurred in connection with the defense of the Adversary Defendants in the Adversary Proceeding. Both Scottsdale and Chubb have acknowledged their duty to defend the Adversary Defendants, yet only Scottsdale has fulfilled its duty. Chubb's reliance on the "Other Insurance" clause in its policy is erroneous since its policy does not overlap temporally with the Scottsdale Policy. Rather, where policies do not insure the same risk, as is the case with policies issued during entirely different policy periods, "other insurance" clauses are irrelevant.

68. Scottsdale requests that the Court declare that Scottsdale is entitled to contribution from Chubb for costs incurred in connection with the defense of the Adversary Defendants.

**COUNT II – CONTRIBUTION**

69. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 68 of this Complaint.

70. Scottsdale has incurred and will continue to incur attorneys' fees and costs in defense of the Adversary Proceeding.

71. Chubb has breached its duty to defend the Adversary Proceeding and wrongfully refused to contribute to the attorneys' fees and costs incurred and to be incurred defending the Adversary Proceeding.

72. Scottsdale is entitled to recover contribution from Chubb for Chubb's share of the attorneys' fees and costs incurred and to be incurred by Scottsdale in defense of the Adversary Proceeding.

## **PRAYER FOR RELIEF**

WHEREFORE, Scottsdale prays that this Court enter an Order:

1. declaring that Scottsdale is entitled to contribution from Chubb for costs incurred in connection with the defense of the Adversary Defendants in the Adversary Proceeding;

2. awarding Scottsdale contribution in the amount of the attorneys' fees and costs that Chubb should have paid in connection with the defense of the Adversary Defendants in the Adversary Proceeding;

3. awarding Scottsdale its costs, expenses, and attorneys' fees together with pre- and post-judgment interest to the greatest extent allowed by law; and

4. awarding Scottsdale all other relief that the Court deems just and equitable.

/ / /

/ / /

# DEMAND FOR JURY TRIAL

Plaintiff Scottsdale demands a jury trial of all claims and causes of action triable before a jury.

DATED this 25th day of January, 2022.

          **BURCH & CRACCHIOLO, P.A.**

          */s/ Frank M. Fox*
          Frank M. Fox
          1850 N. Central Avenue, Suite 1700
          Phoenix, AZ 85004
          ffox@bcattorneys.com

          And

          Alexis J. Rogoski
          Douglas B. Giombarrese
          **SKARZYNSKI MARICK & BLACK LLP**
          One Battery Park Plaza, 32nd Floor
          New York, New York  10004
          Telephone:  (212) 820-7765
          Facsimile:   (212) 820-7740
          arogoski@skarzynski.com
          dgiombarrese@skarzynski.com

          *Attorneys for Plaintiff*